NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NEW JERSEY EDUCATION
ASSOCIATION, et al.

              Plaintiffs,

v.

STATE OF NEW JERSEY, et al.

              Defendants.

Civ. No. 11-5024

OPINION

THOMPSON, U.S.D.J.

This matter has come before the Court on the Defendants New Jersey Senate and New Jersey General Assembly's (the "Legislative Defendants") Motion to Dismiss [Docket # 18]. The Plaintiffs in this matter jointly oppose this motion [19]. The Court has decided this motion after considering all of the parties' submissions and without oral arguments pursuant to Fed R. Civ. P. 78(b). For the reasons that follow the Legislative Defendants' motion will be granted.

## I.    BACKGROUND

This case arises from the enactment of Chapter 78 of Public Law 2011 ("Chapter 78"), which made changes to the New Jersey State retirement system for public employees. Plaintiffs allege that these changes are unconstitutional because, *inter alia*, the enactment of Chapter 78 impairs pre-existing contracts, violates the Due Process Clause, and violates the Takings Clause. The Plaintiffs bring suit for these claims under 42 U.S.C. § 1983. Moreover, Plaintiffs allege that these changes violate provisions of the New Jersey State Constitution and that Defendants

are liable on a theory of promissory estoppel. Plaintiffs seek declaratory and injunctive relief, as well as money damages.

The Legislative Defendants have moved to dismiss the claims against them on the basis of legislative and sovereign immunity. They argue that the federal claims against them must be dismissed based on federal-common-law legislative immunity, and that the state-law claims against them must be dismissed for a litany of reasons also related to absolute immunity. Plaintiffs argue that federal-common-law legislative immunity, state-common-law legislative immunity, and the New Jersey Speech and Debate Clause all apply only to legislators in their personal capacities and not to legislative bodies as a whole.

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. at 1949). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement

with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

The issues of state sovereign immunity and absolute legislative immunity are both properly considered on a motion to dismiss under Rule 12(b)(6). *See Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999) (considering sovereign immunity under Rule 12(b)(6)); *Brown v. City of Camden (In re Camden Police Cases)*, Nos. 11-1315, 10-4757, 2011 U.S. Dist. LEXIS 92314, (D.N.J. Aug. 18, 2011) (same); *Hillburn v. Bayonne Parking Auth.*, No. 07-5211, 2009 U.S. Dist. LEXIS 6762, *16–17 (D.N.J. Jan. 30, 2009) (considering legislative immunity under Rule 12(b)(6)).

## III.   DISCUSSION

The claims in this case raised against the Legislative Defendants appear only to challenge the passing of Chapter 78, not its enforcement. Therefore, for the following reasons, all claims against the Legislative Defendants must be dismissed.

### A.   Federal Claims

The federal claims raised against the Legislative Defendants under 42 U.S.C. § 1983 in this case must be dismissed. It is a long-established tenant of federal practice that state legislators are immune from liability under § 1983. *See, e.g., Tenney* v. *Brandhove*, 341 U.S. 367 (1951). This is because "a private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Eastland* v. *U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975). Plaintiffs argue that this immunity does not extend to legislative bodies as a whole,

but they are mistaken; this case is clearly within the controlling confines of the Supreme Court's decision in *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719 (1980).

In *Consumers Union* the Supreme Court was asked to address the question whether a state appellate court and its individual members were legislatively immune from suit for promulgating and passing the State Bar Code for its attorneys. In addressing this question, the Supreme Court first concluded that passing the State Bar Code was a legislative, and not a judicial, act. *Id.* at 731. Having concluded this, the Court next held that legislative immunity applies in the same fashion whether equitable or legal relief is sought under § 1983. *Id.* at 732–33 ("In *Tenney* we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state legislators. Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief."); *see also Larsen v. Senate of the Commonwealth of Pennsylvania*, 152 F.3d 240, 252–53 (3d Cir. 1998).

The Court then turned to the issue directly relevant to the parties' arguments in this case. The Court stated, "[T]here is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against *the legislature*, its committees, or members . . . the defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity." *Id.* at 733–34 (emphasis added). Plaintiffs argue that this is merely dicta. However, the Supreme Court ultimately held in *Consumers Union* that "*the Virginia Court* and its members are immune from suit when acting in their legislative capacity." *Id.* at 734 (emphasis added). In other words, the state body acting in a legislative capacity—and not just its individual members—were immune from suit under § 1983. *See also Hughes v. Lipscher*, 852 F.

Supp. 293, 296–97 (D.N.J. 1994) (holding that the New Jersey Supreme Court, *as a body*, was immune from suit under § 1983 in its legislative capacity).  Therefore, while Plaintiff's statement that "[t]he Court did not expressly hold that state legislatures enjoy absolute common-law immunity from civil suits and claims[,] [n]or has it ever done so," (Pls.' Br. at 13), is technically correct, this is so only because the Supreme Court has never been presented with this exact question.  The Supreme Court *has* held that state bodies acting in a legislative capacity do enjoy absolute common-law immunity from § 1983 claims, whether or not the relevant state body is actually the state legislature.  Therefore, the present case is clearly within the controlling purview of *Consumers Union*, and the § 1983 claims against the Legislative Defendants must be dismissed.

>    B.   State Claims

The state-law claims against the Legislative Defendants present a different question for the Court.  The federal-common-law legislative immunity discussed above is inapplicable to Plaintiffs' state-law claims.  *See, e.g., Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 405 (1979).  Plaintiffs argue that state legislative immunity doctrine properly distinguishes between legislators (to whom the doctrine applies) and the legislative body (to which the doctrine does not apply), even if federal law does not.

Plaintiffs have essentially two arguments: first, they argue that this is settled law as shown by several cases in which legislative bodies have been a party to the litigation; and second, if this question is not settled law, the Court should be persuaded by other states' highest courts that have held that the Speech and Debate Clause contained in their state constitution is substantially narrower than the federal counterpart.  Defendants, on the other hand, make the following arguments: (1) the Court should be persuaded by federal authority because New Jersey

state courts have consistently relied on federal precedent when interpreting the New Jersey version of the Speech and Debate Clause; (2) even if there was a conflict between federal and state law on this issue, the Supremacy Clause of the United States Constitution requires application of federal law; (3) the Court should abstain from deciding this unsettled question under *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941) and its progeny, and therefore dismiss the state law claims against the Legislative Defendants; (4) that the Court should refuse to exercise supplement jurisdiction over the state law claims; and (5) the Eleventh Amendment prevents a federal court from requiring a state actor to conform their conduct to state law.

Contrary to the Plaintiffs' contention, the question of state legislative immunity appears to be unsettled in the New Jersey state courts. As such, the Court will not address the state legislative immunity issue presented by the parties because doing so would require the Court to answer an unsettled question of state law and because there are alternative grounds upon which the Legislative Defendants can prevail. *Pullman*, 312 U.S. at 500 ("The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court."). At this time, the Court will dismiss the remaining state-law claims against the Legislative Defendants because such claims are barred by the Eleventh Amendment.[1]

---

[1] The Court is aware that, generally speaking, "[a]n issue is waived unless a party raises it in its opening brief," *Laborers' Int'l Union of N.Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994), and that the Legislative Defendants did not raise this issue until its reply brief. However, because of the weighty constitutional concerns inherent in a federal court forcing a state legislature to abide by its own state constitution, the Court deems consideration of this issue appropriate. The federal government, including the federal courts established under Article III of the United States Constitution, "can claim no powers which are not granted to it by the constitution, and the powers actually granted, must be such as are expressly given, or given by necessary implication." *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat) 304, 326 (1816). The Eleventh Amendment and its principle of sovereign immunity "is a constitutional limitation on the federal judicial power established in Art. III." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984). And it is abundantly clear to the Court that, because of the Eleventh Amendment, it "cannot enforce state law against a state official acting in his or her official capacity." *Kliesh v. Bucks County Domestic Rels.*, No. 04-4714, 2005 U.S. App. LEXIS 23445, *2 (3d Cir. Oct. 27, 2005) (per curiam).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. 11.  Although by its express terms this Amendment applies only to suits by citizens of another state, it has long been established that the Eleventh Amendment also bars suits against a state by one of its own citizens.[2]  *See Hans v. Louisiana*, 134 U.S. 1, 20 (1890).

"[A] district court [i]s barred by the Eleventh Amendment from ordering the state officials to conform their conduct to state law."  *Jones v. Connell*, 833 F.2d 503, 505 (3d Cir. 1987) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)); *see also Kliesh v. Bucks County Domestic Rels.*, No. 04-4714, 2005 U.S. App. LEXIS 23445, *2 (3d Cir.

---

"The States unquestionably . . . retain a significant measure of sovereign authority."  *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 549 (1985) (internal quotation marks omitted); *see also* U.S. CONST. AMEND. 10.  The federal government and the fifty state governments work in a system of dual-sovereignty, and "[n]either government may destroy the other nor curtail in any substantial manner the exercise of its powers." *Metcalf & Eddy v. Mitchell*, 269 U.S. 514, 523 (1926). Perhaps the greatest and most significant measure of sovereign authority is having the final say over the interpretation of the document from which the sovereign derives its power.  There may be no greater threat to that sovereign authority than a federal court mandating that a state legislature abide by a federally-imposed interpretation of the very document from which that legislature derives its existence and authority.  *See, e.g., Pennhurst State Sch. & Hosp.*, 465 U.S. at 106; *see also Luther v. Borden*, 48 U.S. (7 How) 1, 42 (1849) (refusing to decide the question of which of two competing governments was established within a state).  A sovereign state that does not have final say over the interpretation of its own founding document is no sovereign at all.

The consent of state officials (through inadvertent waiver of a defense or otherwise) cannot enlarge the powers of this Court.  Moreover, courts consistently require "that the State's consent be unequivocally expressed." *Pennhurst State Sch. and Hosp.*, 465 U.S. at 99.  Simple failure to raise such an argument in its opening brief does not satisfy this standard.  For these reasons, the Court deems consideration of the Legislative Defendants' Eleventh Amendment argument proper.

[2] The Court notes that the Legislative Defendants, and not the State of New Jersey, are the moving parties.  It cannot be credibly argued, however, that the Legislative Defendants are not the "State" for purposes of the Eleventh Amendment.  "[A] suit may be barred by the Eleventh Amendment even though a State is not named a party to the action, so long as the State is deemed to be the real party in interest."  *Haybarger v. Lawrence County Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  In the Third Circuit, "several factors [are considered] in determining whether a suit against an entity is actually a suit against the State itself, including: (1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy."  *Id.* (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)).  All three of these factors weigh in favor of recognizing the Legislative Defendants as the "State" for purposes of Eleventh Amendment sovereign immunity.

Oct. 27, 2005) (per curiam) ("[A] federal court cannot enforce state law against a state official acting in his or her official capacity.").  The reason for this is simple:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Pennhurst State School & Hospital*, 465 U.S. at 106.  Because of these considerations, the Court will follow the lead of the Court of Appeals for the Third Circuit's decision in *Allegheny Cnty. Sanitary Auth. v. E.P.A.*, 732 F.2d 1167 (3d Cir. 1984).  In that case, the district court declined to exercise pendant jurisdiction over the plaintiffs' state law claims after it had dismissed all of the plaintiffs' federal claims.  *Id.* at 1173.  In affirming, the court held "that the state law claims were properly dismissed," but unlike the district court, the Third Circuit "base[d] [its] determination on the Eleventh Amendment."  *Id.*  This Court, therefore, will likewise base its determination on Eleventh Amendment considerations.[3]   Thus, the Plaintiff's state-law claims against the Legislative Defendants are dismissed and the parties' other arguments need not be addressed.

---

[3] Even if, as Plaintiffs contend, the Legislative Defendants are subject to suit in state court because New Jersey state legislative immunity doctrine applies only to individual legislators, this does not mean that the Legislative Defendants have waived their Eleventh Amendment immunity in federal court.  *See Pennhurst State School & Hospital*, 465 U.S. at 100 n.9 ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts." (citing *Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (per curiam)).

**IV.** **CONCLUSION**

For the reasons stated above, the Legislative Defendants motion to dismiss is granted and all claims against them are dismissed.  An appropriate order will follow.


                                         */s/ Anne E. Thompson*

                                         ANNE E. THOMPSON, U.S.D.J.


Date: December 12, 2011